Duke Energy Carolinas, LLC v. AG Ins. SA/NV, 2021 NCBC 11.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

DUKE ENERGY CAROLINAS, LLC
and DUKE ENERGY PROGRESS,
LLC,

             Plaintiffs,

v.

AG INSURANCE SA/NV (f/k/a
L'Etoile S.A. Belge d'Assurances); et
al.,

             Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 5594

**ORDER AND OPINION ON
ARROWOOD INDEMNITY
COMPANY'S MOTION FOR
SUMMARY JUDGMENT ON THE
STATUTE OF LIMITATIONS AND
DUKE ENERGY CAROLINAS, LLC'S
MOTION TO STRIKE INADMISSIBLE
SETTLEMENT COMMUNICATIONS**

1.    **THIS MATTER** is before the Court on Defendant Arrowood Indemnity Company's[1] Motion for Summary Judgment on the Statute of Limitations filed on July 10, 2020 (the "Motion"), (ECF No. 770), and Plaintiff Duke Energy Carolinas, LLC's ("DEC") (formerly Duke Power Company)[2] Motion to Strike Inadmissible Settlement Communications (the "Motion to Strike"), (ECF No. 785).

2.    This action focuses on whether Defendants—all insurers who issued excess level insurance policies to DEC and DEP—are obligated to compensate those entities for alleged liabilities linked to coal combustion residuals ("CCRs"), i.e., coal ash, at fifteen power plants DEC or DEP owns in North and South Carolina.

---

[1] Defendant Arrowood Indemnity Company's predecessor, Royal Indemnity Company, and its related affiliates Royal Insurance Company and Royal & SunAlliance, took certain actions referenced in this Order and Opinion. To avoid confusion, the Court will reference these three Royal entities and Arrowood Indemnity Company interchangeably in this Order and Opinion as "Arrowood."

[2] DEC, its predecessor Duke Power Company, and another entity taking actions referenced herein, Duke Energy Corporation, will be referenced interchangeably in this Order and Opinion as "Duke." Plaintiff Duke Energy Progress, LLC ("DEP") (formerly Carolina Power & Light Company) is not involved in the current Motion.

3.     Arrowood's Motion puts at issue whether certain letters Duke and Arrowood exchanged between 1997 and 2001 triggered the applicable three-year statute of limitations for Duke's claims against Arrowood and thus whether this action, filed against Arrowood in 2017, is time-barred.   Having considered the Motion, the materials submitted in support of and in opposition to the Motion, the arguments of counsel at the hearing on the Motion, and other appropriate matters of record, the Court hereby **DENIES** Arrowood's Motion and **GRANTS** Duke's Motion to Strike.

> *Pillsbury Winthrop Shaw Pittman LLP, by Mark J. Plumer, Aaron D. Coombs, Matthew G. Jeweler, Barry Fleishman, W. Kirk Gandy, and Jeffrey W. Mikoni, and Hunton & Williams LLP, by A. Todd Brown and Ryan G. Rich, for Plaintiffs Duke Energy Carolinas, LLC and Duke Energy Progress, LLC.*

> *Freeborn & Peters LLP, by Bruce M. Engel, Patrick Frye, and Ryan G. Rudich, and Bradley Arant Boult Cummings LLP, by Matthew S. DeAntonio and Corby C. Anderson, for Defendant Arrowood Indemnity Company.*

> *Rivkin Radler LLP, by Alan S. Rutkin, George D. Kappus, and Greg E. Mann, and Goldberg Segalla, by David L. Brown, for Defendants Associated Electric and Gas Insurance Services Ltd., Berkshire Hathaway Direct Insurance Company, and TIG Insurance Company.*

> *Law Offices of John F. Baughman, PLLC, by John Baughman, and White and Williams, LLP, by Shane Heskin, for Defendants Century Indemnity Company, Federal Insurance Company, and Pacific Employers Insurance Company.*

> *Karbal Cohen Economou Silk Dunne LLC, by Gerald Ziebell, for Defendants First State Insurance Company and Twin City Fire Insurance Company.*

> *Mintz Levin Cohn Ferris Glovsky & Popeo, P.C., by Paul Kalish, and Squire Patton Boggs (US) LLP, by G. David Godwin, for Defendants Allianz Global Risks US Insurance Company, Allianz Underwriters Insurance Company, and Fireman's Fund Insurance Company.*

*Saiber LLC, by Michael J. Balch, for Defendant General Reinsurance Corporation.*

*Clausen Miller P.C., by Ilene Korey, and Fox Rothschild LLP, by Jeffrey P. MacHarg, for Defendant Old Republic Insurance Company.*

*CMK LLP, by John D. LaBarbera, and James, McElroy & Diehl, P.A., by Adam L. Ross, for Defendant United States Fire Insurance Company.*

*Hinkhouse Williams Walsh LLP, by William C. Joern, for Defendant Continental Insurance Company.*

*Jackson & Campbell PC, by Erin N. McGonagle, for Defendants AIG Property Casualty Company, American Home Assurance Company, and Lexington Insurance Company.*

*Windels Marx Lane & Mittendorf LLP, by Eric J. Konecke, for Defendant Allstate Insurance Company.*

*Hogan Lovells US LLP, by Alexander B. Bowerman, for Defendant Assurances Générales de France.*

Bledsoe, Chief Judge.

I.

FACTUAL AND PROCEDURAL BACKGROUND

4.     The Court does not make findings of fact on motions for summary judgment but rather summarizes material facts it considers to be uncontested.

5.     It is undisputed that Arrowood issued an excess liability insurance policy to Duke (Policy No. EC103320) for the period October 31, 1984 to October 31, 1985 (the "Arrowood Policy" or the "Policy").  (Arrowood's Mot. Summ. J. Statute Limitations Ex. 1 [hereinafter "Arrowood Policy"], ECF No. 776.1;[3] Arrowood's Mot. Summ. J. Statute Limitations Ex. 5 [hereinafter "Duke's Version of Arrowood Policy"], ECF No.

---

[3] Where Arrowood's and Duke's proffered versions of the Policy are the same, the Court will cite to the Arrowood Policy at ECF No. 776.1 for ease of reference.

776.5.) Although Duke and Arrowood dispute whether the Policy contains a specific endorsement concerning its underlying first-layer insurance policy,[4] the parties agree that the Policy follows form to the Ranger Policy.[5] (DEC's Redacted Opp'n Arrowood's Mot. Summ. J. Statute Limitations 5 [hereinafter "Duke's Opp'n Br."], ECF No. 825.)[6] The parties also agree that the Arrowood Policy attaches at $52 million for each occurrence. (Arrowood Policy at Item 4; Ranger Policy at Item No. 6, Underlying Limits Schedule No. 1; Arrowood's Redacted Mem. Supp. Mot. Summ. J. Statute Limitations 4 [hereinafter "Arrowood's Mem. Supp."], ECF No. 775;[7] Duke's Opp'n Br. 1, 4.)

6. Under the Policy, Arrowood (the "Company" under the Policy) is required to indemnify Duke (the "Insured" under the Policy) "only [for] loss in excess of such underlying limits[,]" and the Policy "shall attach . . . only after the underlying

---

[4] Arrowood contends that the Policy contains an Endorsement #6, which lists as its underlying policy Ranger Insurance Company policy number EUL300579 (the "Ranger Policy"). (Arrowood Policy at Endorsement #6; Ranger Ins. Co. Policy No. EUL300579 [hereinafter "Ranger Policy"], ECF No. 591.12.) Duke disagrees. (Duke's Version of Arrowood Policy.)

[5] A policy that "follows form" or a "following form policy" is one that "insures the same risks covered by the underlying policy . . . but provides coverage to the insured in addition to and in excess of the coverage provided by [the underlying policy]." *Hartford Accident & Indem. Co. v. Chi. Hous. Auth.*, 12 F.3d 92, 95 (7th Cir. 1993). As this Court has previously explained: "For example, Excess Insurer offers Excess Policy B to provide excess coverage on another policy held by Policyholder, Primary Policy A. Excess Policy B's language defines Excess Policy B's coverage by incorporating Primary Policy A's terms. Excess Policy B 'follows form' to Primary Policy A or is said to provide follow-form coverage." *Duke Energy Carolinas, LLC v. AG Ins. SA/NV*, 2018 NCBC LEXIS 54, at *8 n.2 (N.C. Super. Ct. June 4, 2018).

[6] Duke filed its brief in opposition to the Motion under seal. (ECF No. 788.) For purposes of this Order and Opinion, the Court will reference the redacted, public version. (ECF No. 825.)

[7] Arrowood filed its memorandum in support of its Motion under seal. (ECF No. 771.) For purposes of this Order and Opinion, the Court will reference the redacted, public version. (ECF No. 775.)

insurers have paid or have been held to pay the full amount of their respective loss liability as described in the underlying limits[.]" (Arrowood Policy at Insuring Agreements 1–2.)

7. The Policy contains a "Notice of Occurrence" Condition, which states:

> Whenever the Insured has information from which they may reasonably conclude that an occurrence covered hereunder involves injuries or damage which, in [the] event that the Insured shall be held liable, is likely to involve this policy, notice shall be sent to the Company as soon as practicable, provided however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this policy, but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims[.]

(Arrowood Policy at Condition 2.)

8. The Policy also contains an "Action Against Company" Condition:

> No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

(Arrowood Policy at Condition 8.)

9. The Ranger Policy defines "occurrence," in relevant part, as "an accident, event or continuous or repeated exposure to conditions which result in . . . PROPERTY DAMAGE, subject to the following clarifications[,]" which include "all injury, damage or loss of use and all claims for injury, damage or loss of use arising out of the same accident, the same event or exposure to substantially the same general conditions shall be considered as arising out of and comprising a single OCCURRENCE[.]" (Ranger Policy at §§ III(i), III(i)(1).)

10. The current dispute between Duke and Arrowood centers on the interpretation of certain letters, identified below, the companies sent to each other between 1997 and 2001, as well as in 2016 and 2017, regarding the Arrowood Policy.

A.    Duke's 1997 Notice

11. On February 13, 1997, Duke's Associate General Counsel sent a letter to Arrowood's Asbestos Manager with the subject line:

> Insured:       [Duke]
> Sites/Claims: Asbestos-Related Bodily Injury and Various Property
>               Damage (See Attachment)

(Arrowood's Mot. Summ. J. Statute Limitations Ex. 2 at 1 [hereinafter "1997 Notice"], ECF No. 776.2.)  The letter begins:

> [Duke] is writing to provide you with notice of certain claims and/or circumstances that may give rise to certain claims for coverage.  Our records reflect that you issued Duke at least policy no. EC 103320 (10/31/84 – 10/31/85).

(1997 Notice.)

12. Following a one-paragraph section titled "Asbestos-Related Bodily Injury Claims[,]" the letter contains a six-page section titled "Environmental Property Damage Claims."  (1997 Notice §§ I, II.)  Part B of this second section concerns "Coal-Fired Power Plants" and identifies eight Duke-owned power plants in North and South Carolina.  The letter states that at five of the eight plants listed, groundwater testing has shown "the presence of contaminants above applicable state cleanup criteria."  (*See* 1997 Notice § II.B.1–2, 5–6, 8 (Allen ("Ground water sampling at this site show the presence of contaminants above the applicable state cleanup criteria."); Belews Creek ("Testing from these wells show the presence of contaminants in the

ground water above the applicable state cleanup criteria."); Dan River ("Sampling of ground water at the site demonstrates the presence of contaminants above the applicable state cleanup criteria."); Marshall ("Sampling of ground water at this site demonstrates the presence of contaminants above the applicable state cleanup criteria."); and Lee ("Sampling of ground water at this site demonstrates the presence of contaminants above the applicable state cleanup criteria.")).) The letter further states that "[n]o investigation has been conducted at [either Cliffside or Riverbend] to date" and that "[n]o investigations or cleanup have been conducted at [Buck] to date." (1997 Notice § II.B.3–4, 7.)

13. The final sentence of the letter provides: "Please let us know as soon as possible if you believe that the policy(ies) sold by you to Duke do not provide defense and/or indemnity for the claims identified above." (1997 Notice.)

B. Duke's February 2000 Letter

14. On February 29, 2000, Duke's Deputy General Counsel sent a letter to Arrowood's Assistant Vice President of Excess & Surplus Claims regarding both environmental and asbestos-related claims ("February 2000 Letter"). (Duke's Opp'n Br. Ex. 5 Feb. 29, 2000 Letter [hereinafter "Feb. 2000 Letter"], ECF No. 794.) The subject line of that letter states:

Insured:      [Duke]

Sites/Claims: Various Property Damage (See Attachment) and
              Asbestos-Related Bodily Injury Claims

(Feb. 2000 Letter 1.)

15. The letter specifically addresses "Duke's environmental claims":

As to your statement that further information is needed with regard to Duke's environmental claims, we have voluminous documentation for each of the sites. If you would like to review these documents at Duke's offices, please let me know. Alternatively, if you could be more specific as to the type of information you need, we are prepared to provide you copies at your expense. *We note, however, that at the present time, Duke does not believe that it is reasonably likely that the costs for any of its environmental liabilities will exhaust the coverage underlying the [Arrowood] policy, which attaches at $50 million.*

(Feb. 2000 Letter 1 (emphasis added).)

16. The February 2000 Letter continues as to "Duke's asbestos-related claims":

Nevertheless, [Arrowood] is required to provide indemnification for Duke's asbestos-related claims because Duke has spent an amount in excess of the underlying limits of the [Arrowood] coverage. [Arrowood] is obligated to indemnify Duke regardless of whether the underlying carriers have provided indemnification.

(Feb. 2000 Letter 2.)

17. Several months later, Duke's Deputy General Counsel sent a letter dated June 6, 2000 to Arrowood ("June 2000 Letter") stating, in relevant part, that "[w]e do not disagree with your conclusion that [Arrowood] has 'no duty' as an excess insurer to investigate [Duke's] asbestos and environmental claims." (Duke's Opp'n Br. Ex. 6 June 6, 2000 Letter [hereinafter "June 2000 Letter"], ECF No. 795.)

C. Arrowood's 2001 Letter

18. On May 24, 2001, a Technical Analyst with Arrowood's Environmental Claims Department sent a letter to Duke. (Arrowood's Mot. Summ. J. Statute Limitations Ex. 3 [hereinafter "2001 Letter"], ECF No. 776.3.) The subject line states:

Insured: [Duke]
Subject: Asbestos-Related Bodily Injury Claims
Pollution Related Property Damage Claims
Policy No: REC103320 (10/31/84 to 10/31/85)

Claim No:    0700011047-00

(2001 Letter 1.)

19.    The 2001 Letter begins: "Please consider this correspondence as our acknowledgment of the above captioned claims, which we have not received in their entirety.  This letter will set forth our coverage position with regards to these matters."  (2001 Letter 1.)

20.    The 2001 Letter later continues:

Policy REC103320 (10/31/84 to 10/31/85) is an Excess Umbrella Policy. Policy REC103320 (10/31/84 to 10/31/85) has policy limits of $12,000,000 part of $25,000,000 each occurrence and in the aggregate where applicable excess $50,000,000 each occurrence and in the aggregate where applicable excess primary.  Policy REC103320 (10/31/84 to 10/31/85) is excess of the underlying umbrella carrier, Ranger Insurance Company policy.  We have not received any information to date that would indicate that the layers of insurance below ours have been exhausted.  [Arrowood] will not provide for any of the defenses and/or indemnification of any matter until such time as all applicable underlying insurance coverage is exhausted.

We have reviewed these matters for coverage under policy REC103320 (10/31/84 to 10/31/85) with [Arrowood] and now wish to inform you our findings.

(2001 Letter 1.)

21.    Following a section titled "Asbestos-Related Bodily Injury Claims[,]" the letter contains a second section titled "Pollution Property Damage Claims[.]"  (2001 Letter at 2.)  This second section provides that:

The information provided is very limited as to the facts and details surrounding the pollution property damage claims.  According to the information received, various pollutants have been found at the property sites, including but not limited to . . . Coal-Fired Power Plants . . ., which resulted in the contamination of the soil and groundwater.

(2001 Letter 2.)

22.    After quoting various provisions of the Arrowood Policy, the letter then states:

> With regard to the Pollution-Related Property Damage claims, which includes the soil and groundwater contamination caused by various pollutants.  We refer you to the endorsement,
> **Sudden and Accidental Pollution/Contamination on Air, Land and Water Exclusion** found under policy REC103320 (10/31/84 to 10/31/85), which states: . . .
>
> In consideration of the premium charged, it is agreed that this coverage afforded by this policy shall not apply to any liability for personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants, or pollutants into or upon land, the atmosphere or any water course or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

(2001 Letter 5–6.)

23.    Arrowood then states its determination: "Based on the aforementioned pollution exclusion, [Arrowood] respectfully declines coverage for both indemnity and defense for the Pollution-Related Property Damage claims."  (2001 Letter 6.)

24.    The letter concludes:

> [Arrowood] declines coverage for indemnity and defense in the Pollution-Related Property Damage claims, as the Pollution Exclusion preclude[s] coverage under policy REC103320 (10/31/84 to 10/31/85).  We trust that we have adequately explained why the captioned policy would not respond to the Pollution-Related Property Damage claims.
>
> Should there be any additional information that would warrant our reconsideration, please forward it to the undersigned for review.  If you have any questions concerning this letter, please contact the undersigned directly[.]

(2001 Letter 7.)  It is undisputed that Duke did not respond to the 2001 Letter.

D.   Duke's 2016 Notice

25.   Over fifteen years later, on August 29, 2016, Duke, on behalf of itself "and its subsidiaries, affiliates, and predecessors" sent a letter to Arrowood ("2016 Notice") stating that the letter:

> provides notice and/or updated notice, of occurrences that either have or may give rise to claims that are covered under insurance policies issued by you.  Duke faces, or may face, liability in connection with its coal combustion residuals ("CCRs"), including CCR impoundments, landfills, and other areas with CCRs, at various power plants, including but not limited to in North Carolina, [and] South Carolina[.] . . . It has been alleged that these CCR units have caused third-party property damage, including contamination of groundwater and surface water.  Duke is being, or may in the future be, compelled to remediate this alleged third-party property damage under state and federal law.  Duke hereby provides notice under policies issued by you in connection with Duke's CCR-related liability.

(Duke's Opp'n Br. Ex. 12 Aug. 29, 2016 Letter 1 [hereinafter "2016 Notice"], ECF No. 801.)

26.   In the 2016 Notice, Duke states that it faces or may face potential liability from several sources, including under North Carolina's Coal Ash Management Act ("CAMA") enacted in September 2014 and the applicable federal "CCR Rule" effective in April 2015, as well as other state and federal statutes and regulations.  The 2016 Notice further provides that:

> Duke may be, and in some instances already is, required to incur substantial costs to remediate alleged third-party property damage allegedly emanating from CCR.  These costs either exceed the retentions and/or limits underlying your policies or threaten to do so.  Duke hereby notifies you that coverage may be due to it under the terms of your policies.

(2016 Notice 4.)

E.    Duke's 2017 Letters

27.    After receiving a December 6, 2016 letter from Arrowood asking for more information and reserving all rights under the Policy, (Duke's Opp'n Br. Ex. 13 Dec. 6, 2016 Letter, ECF No. 802), Duke sent letters to Arrowood on February 6 and 13, 2017, stating that Duke faces "current liability" under CAMA and "additional liability" under the federal CCR Rule, (Duke's Opp'n Br. Ex.14 Feb. 6, 2017 Letter 2, ECF No. 803; Duke's Opp'n Br. Ex. 15 Feb. 13, 2017 Letter 2, 4 [hereinafter "Feb. 13, 2017 Letter"], ECF No. 804).  Duke's February 13, 2017 letter further stated that "[t]he policy in Duke's files does not contain a qualified pollution exclusion."  (Feb. 13, 2017 Letter 4.)

F.    Arrowood's 2017 Letter

28.    By letter dated March 14, 2017 ("2017 Letter"), Arrowood responded to Duke's February 2017 letters.  (Duke's Opp'n Br. Ex. 16 Mar. 14, 2017 Letter [hereinafter "2017 Letter"], ECF No. 805; Second Aff. Ryan G. Rudich Supp. Arrowood's Mot. Summ. J. Statute Limitations Ex. 25, Arrowood Mar. 14, 2017 Letter, ECF No. 838.4.)  The 2017 Letter explains that a pollution exclusion in the Policy ("Pollution Exclusion") excludes coverage for coal ash liability and provides, in relevant part:

> As previously stated, the [Duke] Policy contains Endorsement #8 that, in short, excludes coverage of any liability arising out of pollution (the "Pollution Exclusion").  [Duke], however, asserts that its copy of the [Duke] Policy does not include the Pollution Exclusion.  Please clarify whether [Duke] agrees or disagrees that the [Duke] Policy includes the Pollution Exclusion.

(2017 Letter 1–2.)

29. The 2017 Letter then refers to the 2001 Letter as a letter denying coverage for Duke's coal ash liability based on the Policy's Pollution Exclusion:

> On May 24, 2001, in a letter written in response to claims submitted under the [Duke] Policy, Arrowood denied coverage for the Pollution-Related Property Damage claims because the Policy contained the Pollution Exclusion, which Arrowood quoted verbatim on page 6 of its letter. This letter was addressed to Mr. Poe at [Duke]. [Duke] did not deny that the Policy included a pollution exclusion.

(2017 Letter 2.)

30. Further, the 2017 Letter states that "Arrowood reserves all rights under the [Duke] Policy in connection with the seven CCR sites." (2017 Letter 2.)

31. Shortly thereafter, on March 29, 2017, Duke filed this lawsuit, seeking coverage for its coal ash remediation costs under numerous insurance policies, including the Arrowood Policy. (Compl., ECF No. 1.)

32. After full briefing, the Court held a hearing on the Motions on October 6, 2020 by WebEx video conference (the "Hearing"), at which all parties were represented by counsel. The Motions are now ripe for resolution.

II.

LEGAL STANDARD

33. Under Rule 56 of the North Carolina Rules of Civil Procedure ("Rule(s)"), "[s]ummary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *Da Silva v. WakeMed*, 375 N.C. 1, 10 (2020) (quoting N.C. R. Civ. P. 56(c)). "An issue is 'genuine' if it can be proven by substantial evidence

and a fact is 'material' if it would constitute or irrevocably establish any material element of a claim or a defense." *Fullwood v. Barnes*, 250 N.C. App. 31, 36 (2016) (quoting *Lowe v. Bradford*, 305 N.C. 366, 369 (1982)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and means more than a scintilla or a permissible inference[.]" *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681 (2002) (citations and internal quotation marks omitted). The Court must view the evidence "in a light most favorable to the non-moving party." *McCutchen v. McCutchen*, 360 N.C. 280, 286 (2006) (citation omitted).

34. "The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579 (2002). The movant may meet this burden either: (1) "by proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense" or (2) "by showing through discovery that the opposing party cannot produce evidence to support an essential element of [its] claim[.]" *Dobson v. Harris*, 352 N.C. 77, 83 (2000) (citations omitted). If the movant meets its burden, "the burden then shifts to the nonmovant to come forward with specific facts establishing the presence of a genuine factual dispute for trial." *Pennington*, 356 N.C. at 579; *see also* N.C. R. Civ. P. 56(e) ("[A]n adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").

ANALYSIS

35. As an initial matter, "an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *Fid. Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380 (1986). The Supreme Court of North Carolina has recently articulated the relevant standards for the interpretation and construction of an insurance policy as follows:

> When interpreting an insurance policy, courts apply general contract interpretation rules. *See, e.g.*, *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 172 S.E.2d 518 (1970). "As in other contracts, the objective of construction of terms in an insurance policy is to arrive at the insurance coverage intended by the parties when the policy was issued." *Id.* at 354, 172 S.E.2d at 522 (citing *McDowell Motor Co. v. N.Y. Underwriters Ins. Co.*, 233 N.C. 251, 63 S.E.2d 538 (1951); *Kirkley v. Merrimack Mut. Fire Ins. Co.*, 232 N.C. 292, 59 S.E.2d 629 (1950)). In North Carolina, determining the meaning of language in an insurance policy presents a question of law for the Court. *Id.*
>
> When interpreting the relevant provisions of the insurance policy at issue, North Carolina courts have long held that any ambiguity or uncertainty as to the words used in the policy should be construed against the insurance company and in favor of the policyholder or beneficiary. *Id.* If a court finds that no ambiguity exists, however, the court must construe the document according to its terms. *Id.* (citing *Williams v. Nationwide Mut. Ins. Co.*, 269 N.C. 235, 238, 152 S.E.2d 102, 105 (1967)).
>
> Ambiguity is not established by the mere fact that the insured asserts an understanding of the policy that differs from that of the insurance company. *Wachovia Bank & Tr. Co.*, 276 N.C. at 354, 172 S.E.2d at 522. Rather, ambiguity exists if, in the opinion of the court, the language is "fairly and reasonably susceptible to either of the constructions for which the parties contend." *Id.* The court may not remake the policy or "impose liability upon the company which it did not assume and for which the policyholder did not pay." *Id.*

> If the policy contains a definition of a term, the court applies that meaning unless the context requires otherwise. *Id.* However, if the policy fails to define a term, the court must define the term in a manner that is consistent with the context in which the term is used, and the meaning accorded to it in ordinary speech. *Id.* (citing *Peirson v. Am. Hardware Mut. Ins. Co.*, 249 N.C. 580, 107 S.E.2d 137 (1959)).

*Accardi v. Hartford Underwriters Ins. Co.*, 373 N.C. 292, 295 (2020).

36. Our courts have further instructed that "[t]he various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect." *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 506 (1978); *see also Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 9 (2010) ("We construe all clauses of an insurance policy together, if possible, so as to bring them into harmony." (citation and internal quotation marks omitted)). Moreover, "a contract of insurance should be given that construction which a reasonable person in the position of the insured would have understood it to mean[.]" *Grant v. Emmco Ins. Co.*, 295 N.C. 39, 43 (1978). In sum, the "intention of the parties as gathered from the language used in the policy is the polar star that must guide the courts[.]" *Cowell v. Gaston Cty.*, 190 N.C. App. 743, 746 (2008) (quoting *McDowell Motor Co.*, 233 N.C. at 253).

37. Arrowood contends that Duke's 1997 Notice constituted a "notice of occurrence" under the Policy that required Arrowood to determine whether the Policy covered Duke's liabilities arising from groundwater contamination at Duke's coal ash basins as described in the 1997 Notice. Because Arrowood expressly denied coverage for any such liability based on the Policy's Pollution Exclusion in its 2001 Letter, Arrowood argues that the applicable three-year statute of limitations under N.C.G.S.

§ 1-52(1) began to run in May 2001 and that Duke's failure to sue Arrowood for Arrowood's alleged breach of the Policy's coverage provisions until 2017 necessitates the dismissal of Duke's claims as time-barred. (Arrowood's Mem. Supp. 7–8, 10, 12.)

38. Duke argues in response that Arrowood's motion should be denied because "Duke could not and did not make a 'claim' to Arrowood for coal ash in 1997," and thus that "there was no 'claim' for Arrowood to deny in 2001." (Duke's Opp'n Br. 2.) Duke further contends that Arrowood's motion is without merit because Duke was not "at liberty to sue" Arrowood until 2014 on grounds that "Duke had no coal ash liability and had spent no money on coal ash liability" until that time, and that even if Duke could have sued Arrowood prior to 2004, Duke had no duty under North Carolina law to do so. (Duke's Opp'n Br. 2, 7, 18–21.) Duke also argues that application of the continuing duty principle applied by the North Carolina Court of Appeals in *Duke University v. St. Paul Mercury Insurance Co.*, 95 N.C. App. 663, 672 (1989), dooms Arrowood's motion, and, further, that Arrowood's contentions of prejudice due to Duke's delay in filing this action are baseless and, in any event, irrelevant under proper statute of limitations analysis. (Duke's Opp'n Br. 21–24.)

39. "Notice provisions in insurance contracts have long been recognized as valid in North Carolina." *Royal Ins. Co. of Am. v. Cato Corp.*, 125 N.C. App. 544, 549 (1997). "The purpose and intention of an insurance contract's notice provision is to enable the insurer to begin its investigation and to initiate other procedures as soon as possible after a claim arises, and to avoid any prejudice that might be caused by a delay in receiving notice." *S.C. Ins. Co. v. Hallmark Enters.*, 88 N.C. App. 642,

646, *disc. rev. denied*, 322 N.C. 482 (1988). "Unless the insured . . . can show compliance with the requirement, the insurer is relieved of liability." *Cato Corp.*, 125 N.C. App. at 549 (quoting *Davenport v. Indem. Co.*, 283 N.C. 234, 238 (1973)).

40. The Policy here provides that an "occurrence" is, in relevant part, "an accident, event or continuous or repeated exposure to conditions which result in . . . PROPERTY DAMAGE[.]" (Ranger Policy at § III(i).) The Notice of Occurrence Condition in the Policy requires Duke to provide notice "[w]henever [Duke] has information from which [Duke] *may reasonably conclude* that an occurrence covered hereunder involves injuries or damages which, in [the] event that [Duke] shall be held liable, *is likely to involve this policy*[.]" (Arrowood Policy at Condition 2 (emphasis added).) This same provision goes on to distinguish between an "occurrence" and a "claim," noting that "failure to give notice of any *occurrence* which at the time of its happening did not appear to involve this policy, but which at a later date, would appear to give rise to *claims* hereunder, shall not prejudice such *claims*." (Arrowood Policy at Condition 2 (emphasis added).) But, as noted, the Policy's notice obligation speaks only to an "occurrence," not a "claim."

41. The Court now examines Duke's 1997 Notice against these Policy provisions. Duke argues that its 1997 Notice did not constitute notice of any "claim" concerning coal ash liability and instead simply provided a "notice of circumstances" that potentially might give rise to a "claim" at some later date. For its support, Duke points to its opening language in the 1997 Notice—"[Duke] is writing to provide you with notice of certain claims and/or circumstances that may give rise to certain claims

for coverage"—and the fact that the 1997 Notice did not identify any "claims, suits, or liability, described no further action as being required, and described no money spent" at any of the listed plants. (Duke's Opp'n Br. 7.) Arrowood contends that a "notice of occurrence" was the only notice required or contemplated under the Policy, that Duke's 1997 Notice was necessarily such a notice, and that Duke's distinction between "claims" and "circumstances" is meaningless under the Policy's plain provisions. (Arrowood's Reply Mem. Law Supp. Mot. Summ. J. Statute Limitations 2–3, ECF No. 837.)

42. Although the parties have given considerable attention to these competing positions in their briefing and arguments, the Court concludes that it need not dwell on them here in light of Duke's subsequent communications to Arrowood prior to Arrowood's 2001 Letter. In particular, it is undisputed that Duke advised Arrowood in its February 2000 Letter that "at the present time, Duke does not believe that it is reasonably likely that the costs for any of its environmental liabilities will exhaust the coverage underlying the [Arrowood] policy, which attaches at $50 million." (Feb. 2000 Letter 1.) Duke further advised in that same letter that Arrowood was "required to provide indemnification for Duke's asbestos-related claims" but made no similar demand concerning the potential coal ash liability mentioned in the 1997 Notice. (Feb. 2000 Letter 2.) Then, in the June 2000 Letter, Duke stated that it agreed that Arrowood had " 'no duty' as an excess insurer to investigate [Duke's] . . .

environmental claims[,]" (June 2000 Letter), which the parties do not dispute included any potential claims for coal ash liability.[8]

43. Taken together and even assuming the 1997 Notice was a "notice of occurrence" as Arrowood contends, a reasonable factfinder could conclude that before Arrowood's 2001 Letter denying coverage was sent, Duke no longer "reasonably conclude[d]" that potential coal ash liability was "likely to involve th[e] Policy" and that therefore Duke no longer sought Arrowood's determination of coverage for potential coal ash liability under the 1997 Notice. The Notice of Occurrence Condition entitles Duke to decide when it "reasonably concludes" that the Policy is implicated. Even if it had so concluded in 1997, a reasonable factfinder could conclude that Duke provided clear and unambiguous notice to Arrowood in 2000 that it no longer believed the Policy was "likely involved" long before Arrowood sent its letter denying coverage based on the Pollution Exclusion. The Policy does not contemplate that Duke, having provided notice that the Policy was not likely to be implicated, should nevertheless be forced to institute suit based on Arrowood's denial letter sent after Duke's purported "notice of occurrence" as to coal ash had been effectively withdrawn. On this record, the Court agrees with Duke that the 2001 Letter could reasonably be seen as "gratuitous and speculative[,]" (Duke's Opp'n Br. 8), and did not trigger the applicable statute of limitations.

---

[8] *See, e.g.*, *Emps. Ins. v. Trico Prods. Corp.*, No. 93-CV-402A(H), 1997 U.S. Dist. LEXIS 19684, at *23–25 (W.D.N.Y. Feb. 25, 1997) (stating that "the excess insurer is not interested in every accident, but only in those that may be serious enough to involve it" (citation omitted)).

44. Even if Arrowood's 2001 Letter could constitute an anticipatory breach or repudiation of the Policy, an issue the parties debate, Arrowood's Motion still fails because Duke did not treat Arrowood's letter as a breach of the Policy and thereby trigger the applicable statute of limitations. As explained by Court of Appeals Judge Tyson in a dissent later adopted by the Supreme Court on appeal:

> For repudiation to result in a breach of contract, "the refusal to perform must be of the whole contract or of a covenant going to the whole consideration, and must be distinct, unequivocal, and absolute[.]" *Furthermore, even a "distinct, unequivocal, and absolute" "refusal to perform" is not a breach "unless it is treated as such by the adverse party."* Upon repudiation, the non-repudiating party "*may* at once treat it as a breach of the entire contract and bring his action accordingly." Thus, breach by repudiation depends not only upon the statements and actions of the allegedly repudiating party but also upon the response of the non-repudiating party.

*N.C. Farm Bureau Mut. Ins. Co. v. Hull*, 251 N.C. App. 429, 438–39 (2016) (Tyson, J., dissenting) (citations omitted), *rev'd*, 370 N.C. 486 (2018) (adopting the dissenting opinion). Here, it is undisputed that Duke did not respond to the 2001 Letter or otherwise treat the 2001 Letter as an anticipatory breach or repudiation of the Policy. As a result, *Hull* makes plain that the 2001 Letter did not trigger the applicable statute of limitations.[9]

---

[9] Arrowood's contention that its 2001 Letter was an actual, rather than an anticipatory, breach of the Policy and thus triggered the statute of limitations is also without merit. Since a reasonable factfinder could conclude that Duke had effectively withdrawn its notice through its February and June 2000 Letters, there was no Policy coverage to determine or deny and, under *Hull*, the 2001 Letter could have constituted an anticipatory breach or repudiation. But because it is undisputed that Duke did not treat the 2001 Letter as a breach, Arrowood's letter did not trigger the applicable statute of limitations.

45.     For each of these reasons, therefore, the Court concludes that Arrowood's Motion must be denied.[10]  *See, e.g.*, *Duke Energy Carolinas, LLC v. Gray*, 369 N.C. 1, 5–6 (2016) ("Allowing a defendant's motion for summary judgment on the basis of the statute of limitations is appropriate only when all the facts necessary to establish the limitation are alleged or admitted by the plaintiff, with the plaintiff receiving the benefit of all relevant inferences.").

IV.

MOTION TO STRIKE

46.     Duke has moved to strike two exhibits—Exhibits 8 and 9, (Aff. Ryan G. Rudich Supp. Arrowood's Mot. Summ. J. Statute Limitations Exs. 8–9, ECF Nos. 772.8–.9 (under seal), 776.8–.9 (public))—filed in support of Arrowood's Motion.  Each is an excerpt from a report prepared by a settlement consultant for Duke in 1996 in connection with Duke's compromise negotiations with Defendant Associated Electric & Gas Insurance Services Limited ("AEGIS") and certain London insurers not party to this action.  Duke contends the documents are inadmissible and should be excluded under North Carolina Rules of Evidence 408, 402, and 403.  (Mem. Supp. DEC's Mot. Strike Inadmissible Settlement Communications 2, 8–11, ECF No. 787 (under seal), 824 (public).)  Arrowood contends in opposition that the exhibits are properly considered, although Arrowood acknowledges that consideration of the exhibits is not

---

[10] Arrowood's additional arguments are premised on Arrowood's contention that the 2001 Letter denied coverage following notice of an "occurrence" that Duke "reasonably concluded" would implicate the Policy.  Given the Court's determination that a reasonable factfinder could conclude that Duke had reconsidered and rejected that conclusion and so notified Arrowood long before Arrowood sent the 2001 Letter, effectively withdrawing Duke's earlier "notice," Arrowood's remaining arguments for dismissal under Rule 56 necessarily fail.

necessary to the Court's determination of the Motion. (Arrowood's Mem. Law Opp'n DEC's Mot. Strike 4–18, ECF No. 845 (sealed), 867 (public).)

47. In considering a motion for summary judgment, our courts have made clear that "the evidence presented to the trial court must be admissible at trial[.]" *Blackmon v. Tri-Arc Food Sys., Inc.*, 246 N.C. App. 38, 41 (2016) (citation omitted). "Evidence which is not relevant is not admissible." N.C. R. Evid. 402. Here, the Court has found it unnecessary to consider or rely upon the exhibits Duke challenges in its Motion to Strike in resolving the Motion because those exhibits are not relevant to the matters at issue on the Motion. As a result, the Court shall exercise its discretion to grant the Motion to Strike on relevance grounds. *See, e.g.*, *Kingsdown, Inc. v. Hinshaw*, 2016 NCBC LEXIS 15, at *8 (N.C. Super. Ct. Feb. 17, 2016) ("A motion to strike is addressed to the sound discretion of the trial court." (citing *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 25 (2003))).

48. Since the Court's ruling is narrowly focused on the lack of relevance of the challenged exhibits to the current Motion, the Court's ruling shall be without prejudice to any party's right to seek to use or admit these same materials in connection with a future motion or proceeding and without prejudice to Duke's right to challenge that requested use or admission on any available ground at such time.

V.

CONCLUSION

49. **WHEREFORE**, for the reasons set forth above, the Court hereby **ORDERS** as follows:

a. Arrowood's Motion for Summary Judgment on the Statute of Limitations is **DENIED**.

b. In the exercise of the Court's discretion, Duke's Motion to Strike is **GRANTED** because the challenged materials are irrelevant to the matters at issue on Arrowood's Motion. The Court's ruling is without prejudice to any party's right to seek to use or admit the materials at issue on the Motion to Strike in connection with a future motion or proceeding and without prejudice to Duke's right to challenge that requested use or admission on any available ground at such time.

**SO ORDERED**, this the 15th day of February, 2021.


/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge